The next matter, number 182248 and number 182249, Donald C. Kupperstein v. Larry Schall, all ten persons from the Executive Office of Health and Human Services. Good morning, Mr. Baker. You don't have to get up if you don't want to. Actually, the exercise is good for me, so I appreciate your concern. All right. Can I ask you something? Have you represented your client throughout this proceeding? I'm sorry, say again? Have you been counsel for Mr. Kupperstein throughout this controversy? Yes, from day one. Is he present? No. Okay, thank you. Thank you, Your Honor. As you say, my client is Donald Kupperstein, the appellant in this matter. And consistent with the opening of the prior arguments, I will observe that as I lurch towards retirement, I seem to be living in the apocryphal Chinese curse, may you live in interesting times. In another bankruptcy case, I recently had to address the issue of the Servicemember's Civil Relief Act and how it works in bankruptcy. In this case, I was introduced by the appellees to the Fugitive Disenfranchisement Doctrine, which some quotes call the Fugitive Disentitlement Doctrine. Donald Kupperstein himself is also a senior citizen. He's 79 years old, an attorney. He was retained by a client to assist the client in purchasing property in Norton, Massachusetts, which was the property of a gentleman named Fred Kuhn who had died, and a probate was opened in the Bristol Probate Court. Mr. Kupperstein and his client went to the air, discussed with her the possibility of purchasing the property. A purchase and sale agreement was reached. The property was sold. Can we cut this a little bit and go to, I think, a main issue here? Has your client, in fact, been held in contempt seven times? Yes, he has, Your Honor. And has an order for arrest been issued against your client? Yes. All right. I would like to know why the Fugitive Disentitlement Doctrine is not applicable to this case. Because, as I understand it from the various cases I've read, there has to be some connection to a criminal matter before it applies. For example, in- Isn't he in cruel contempt at this point? It's civil contempt, not a criminal contempt. Are you saying there are cases that hold that there's a difference? Yes. Deegan v. United States. I think this court in- If you'll give me a moment, I'll find it. Walsh v. Walsh from this court. There is a very distinct difference between the two. I was under the impression that there wasn't any difference, but I'm willing to be educated. Thank you. What the Deegan case from the Supreme Court said is that, and other cases that have discussed the issue, civil contempt is compensatory. It's an order by the court for one party to compensate the other for expenses of volunteer. I'm sure that my colleague here will acknowledge that all of these contempts were processed as civil contempt. Even the complaint in the probate court, Bristol Probate Court, has a checkmark up at the top left that says civil contempt. A civil contempt, as I say, is intended to compensate one party for something that the other party did. I thought the main reason for the doctrine was that the court should not be used by someone who is in, I hate to say the word again, but in contempt of the judicial process. Well, I think we have to step back and recognize the whole context of this. We have two state courts issuing conflicting decisions where the adversaries went first to the Bristol Probate Court. If you disagree with contempt, anyone that says contempt is a procedure whereby you can challenge that, that is, you appeal it, and you have that decision reversed, rather than become a fugitive. Well, again, we have to step back and ask if he's really a fugitive. He's not a fugitive. He's right here in Massachusetts, as far as I know. I know that within the last couple of weeks, he attended the wedding of the daughter of a friend of his on Cape Cod. The fugitive disenfranchisement or disentitlement doctrine requires that the party be a fugitive. He's not a fugitive. They just can't find him. Well, Black's law also defines being a fugitive as someone who evades service of process. He hasn't evaded service of process. He hasn't shown up in court, knowing that there is a capeus for his arrest. Well, now we have to go back to the bankruptcy issues. Recall that he filed the bankruptcy case. The bankruptcy court lifted the stay. Yes, but before the court lifted, and that's one of the issues that was on appeal before the district court, which the district court refused to reach. Oh, sorry, I lost my train of thought there for a second. Once the bankruptcy petition was filed, the automatic stay prevented the Bristol probate court from doing anything, with respect to anything pertaining to his property. This court in Parker v. United States in 1940. Yes, but the court, the appellee was given relief from the stay and was allowed to proceed in the probate court, and your client refused to show up. Because the bankruptcy court made a mistake of fact, made a mistake of law in granting relief from stay. It should not have granted, because the sanctions are dischargeable in a bankruptcy case. The granting of relief from stay was tantamount to deciding that the sanctions are not dischargeable, and that's completely outside the due process aspect of having a court action before the bankruptcy judge, deciding, hearing testimony, deciding whether the debt is dischargeable. Do you actually think you are able to litigate in this proceeding, whether or not your client is content those seven times? I think the... Please, yes or no. Then I'm sorry I have to ask you to repeat the question. It seems to me you're trying to, at this point, litigate whether your client is in contempt or not in those other proceedings. In part. The contempt proceedings that continued after the bankruptcy petition was filed were clear violations of the automatic stay. The MassHealth persuaded the Bristol Probate Court that the automatic stay did not apply to it because of what's called the police power exception. That's simply a mistake of law. Did you appeal that? Sorry? Did you appeal that point? I didn't represent Mr. Kupferstein in the probate court, but... Did anybody appeal it? Sorry? Did anyone appeal that finding? I'm sorry, which finding? The allegation that you were making at this point, the fact that this was not a dischargeable proceeding. After the bankruptcy petition was filed, we did file a motion asking the bankruptcy judge to told the Executive Office of Health and Human Services in contempt for violating the automatic stay. The bankruptcy judge denied that motion wrongly, and that's one of the issues that was before the district court, which the district court refused to reach. So, yes, the issues on appeal at the district court were, was relief from state, properly granted, and secondly, was the Executive Office of Health and Human Services in contempt of the automatic stay. Did Mr. Kupferstein appeal the proceedings in the state court? He attempted to, but for some reason, I haven't been able to figure out, the appeal was never perfected. There is, however, an appeal pending. So that ruling is binding in the state court, whether it's right or wrong? Arguably, yes. So, therefore, you're asking us to review the correctness of a state court decision? No, I'm asking you to review the correctness of a bankruptcy judge's decision that the state didn't apply. And what's interesting about this is that there was also another action in Suffolk Superior Court where they made the same argument, that the state didn't bind them in Superior Court. Superior Court rejected that assertion. That's why I say there's this conflict between probate court and Superior Court. There is an appeal pending. Your time is up. Sorry? Your time is up. Oh, I apologize, Your Honor, thank you. All right. Mr. Spiller, good morning. Good morning, Your Honor. It's Stanford. I should put my glasses on. You may proceed. Good morning, Your Honors. It's Roger Stanford, and I represent Irene B. Schall, who is the successor personal representative of the probate estate of Fred Kuhn. In November of 2016, the Bristol County Probate Court entered an order that voided a deed that Carol Thiebaudot, who was the daughter of the late Fred Kuhn, had executed to Thomas Sheedy and his partner, Attorney Cooperstein. And that deed conveyed a single-family house in Norton, which was basically the sole asset, and was subject to a $191,000 lien to Medicaid because Medicaid had advanced funds to the late Mr. Kuhn before he passed away. Are there any disciplinary proceedings pending? I believe there are, and I understand the – are you talking about the Board of Bar Overseers? Yes. I believe there are, and I understand that informally the Board of Bar Overseers will not act until all litigation is concluded. Okay. And then that's their policy. After that order, Attorney Cooperstein did everything in his power to subvert and avoid that order. He continued to rent the property out. He collected the rents. He was ordered by the probate court to account for the rents, which he has never done. He attempted to sell it. He filed an action in the land court seeking to try title, and when the land court found out about the probate court order, they dismissed the case and sanctioned him for a frivolous filing. He sued his partner, who was also his client, Mr. Sheedy, obtained a $250,000 judgment for labor and materials to the property, and recorded – I'm sorry. I'm trying to get to the heart of this. How do you respond to counsel's argument that the Fugitive Disentitlement Doctrine does not apply to civil proceedings? The case law is clear that it does. I believe even the Dagan case said the Goya case from this court was a civil case, and that's a 2000 or 2001 case. And Walsh, the other First Circuit decision, was a Hague Convention case, which I think comes under a civil case. So our focus should be on – essentially, is the person obstructing justice in a different form as opposed to whether it's in the context of a civil versus criminal proceeding? I think so, yes. I think that's correct. He filed – he was – the probate court held him in contempt and imposed a 30-day jail sentence on December 22, 2017. That was before Mr. Cooperstein filed bankruptcy on January 11, 2018. So to the extent there's a representation that this is some type of violation of the automatic stay, it's not because it occurred beforehand. Attorney Shull was appointed a successor administrator in April of 2018. Soon thereafter, we filed a motion for relief from the automatic stay, as did the Commonwealth. Judge Hoffman, after a hearing, after briefs, granted it. Attorney Cooperstein appealed to the U.S. District Court. And since my time is running out, I want to focus on the third prong of the test, which is the prejudice. The probate estate continues to suffer prejudice as a result of Attorney Cooperstein's actions. The estate remains open while the property has been sold. And there was some appreciation in value between 2016 and 2018 when it was sold. There were carrying costs. It sat for a whole winter vacant. It was insured, but the estate had to pay for the insurance. And there is a continuing – may I just finish that sentence? Finish the sentence. There's a continuing increase of costs in the probate court every year that goes by until a final account is made. And the heir is still waiting to hopefully get some money. Thank you, Your Honors. Mr. O'Neill, good morning. Good morning, Your Honors. May it please the Court, Paul T. O'Neill for the Commonwealth of Massachusetts Executive Office of Health and Human Services, MassHealth. As you know, Your Honor, this case involves a MassHealth lien, which is required under state and federal law to be recouped upon the death of Medicaid recipients who die with assets. That money underscores the public policy of returning that money to the program so that that program can serve additional members of the poor who need those benefits. So this case does have an important public policy purpose underscoring it. In this case, Mr. Cooperstein has alleged as part of his argument that the fugitive disentitlement doctrine that resulted in the dismissal of his cases is somehow constitutionally infirm or that his constitutional rights have been violated. Mr. Cooperstein is not the victim in this case. His constitutional rights have not been violated. Carol Thibodeau, the personal representative of the property in this case, lost her inheritance. Mr. Cooperstein, from the beginning of this case, has been engaging in wrongful conduct. He is an officer of the court. He is an attorney who is duty-bound to obey the court's rules, its orders, and is supposed to be an example for the rest of the population, and he has been none of those things. He engaged from the very beginning of this case in ex parte communications with Ms. Thibodeau while she was represented by counsel, duped her into signing over a deed for the property to her. That deed, as my brother indicated, was reversed in November of 2016. But this case, Your Honor, as you know, this case has been going on since 2013, six years of a war of attrition, of litigation, attempting to re-litigate and re-litigate this issue. The November 29, 2016 order issued by the probate court became final and was not appealed. In response to your question, it was a final order, never timely appealed. Why has the sheriff or constable, whatever you have here in Mass, not been able to serve this attorney? So I can speak directly to that, Your Honor. The Bristol County Sheriff has been diligently attempting to apprehend Mr. Cooperstein on four separate capious warrants for his arrest that have been issued by the Bristol Probate Court. He, at one point, had fled the jurisdiction to Florida, we believe. He has a house in Florida. Another time they have gone to his house, it was closed up, looked abandoned. They have gone to the door a few times, and people in the house have seen them and have run away. They had stopped short of breaking down the door, Your Honor, and we have not asked them to do that. We let them do their job the way that they see fit. However, because Mr. Cooperstein is an attorney, he has an obligation to appear as summonsed by the probate court. He has not appeared in this case since March 9, 2018, despite the fact that he has been summoned to appear by the Bristol Probate Court at least a dozen times. This is an affront to the rule of law. It's an affront to our democracy and the rule of law that it's based on. He swore an oath to respect the court. As to the Fugitive Disentitlement Doctrine, EOHS completely agrees with the estate that the Fugitive Disentitlement Doctrine, its requirements have been met in this case. My brother is incorrect. The Walsh case, the Deegan case, the Goya case, all specifically hold that the Fugitive Disentitlement Doctrine can be applied in a civil context. And although Deegan, the U.S. Supreme Court case in Deegan, did indicate that it should be used sparingly, and we agree with that, we would suggest to the court that based on the egregious facts of this case, this is a case that was specifically intended for it to be applied in. Mr. Cooperstein's general position in this case is that if orders are issued by a court that are final, not appealed, no stay has been granted, and Mr. Cooperstein did request a stay all the way up to this court. He filed a writ of mandamus which was denied by this court. Notwithstanding those, even if that's the case, he's going to choose not to obey those orders while he would ask everyone else to obey those orders. Clearly that's the purpose behind the Fugitive Disentitlement Doctrine, to not allow that conduct and to not give people access to the relief of the court when they're denying that relief and they're denying others the ability to enforce duly issued value judgments of the court. We would ask the court to uphold the dismissals in this case. We think it's appropriate in this case. There is a bar disciplinary investigation pending and I honestly don't know why. Nothing's happened with it. Five judges involved in the land court, the bankruptcy court, the Bristol probate court, the U.S. bankruptcy court have asked about why that is. There are numerous violations of the rule of professional conduct and it is something that this court should not condone. So we ask that the dismissals in this case under the Fugitive Disentitlement Doctrine be upheld. Thank you.